FILED
IN CLERKS OFFICE

2019 APR 12 AM 10: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------X
JOHN DOE,
                                  Plaintiff,

-against-                                Civil Action No: _____

UNIVERSITY OF MASSACHUSETTS AT DARTMOUTH;
PEYTON R. HELM in individual and official capacity;
CYNTHIA CUMMINGS, in individual and official capacity;
DEBORAH MAJEWSKI, in individual and official capacity;
SCOTT WEBSTER, in individual and official capacity;
DAVID GOMES, in individual and official capacity
JOHN BUCK, in his individual and official capacity.
                                  Defendants.
-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM AND PROTECTIVE ORDER

Plaintiff John Doe, (Herein as "John"), Pro Se, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff, and to allow pseudonyms for two "potential" female victims as Jane Doe and Salley Smith. In light of the serious nature of the allegations contained in the Complaint, John is justifiably concerned about the possibility of acts of reprisal that could further prevent John from proceeding with his career and future endeavors, and inflict further severe physical and/or mental harm. John's identity as described in the Complaint, should not be disclosed to the public due to the nature of the allegations in said Complaint.

There is good cause to grant John this relief. John's lawsuit implicates highly sensitive information, including confidential health information. Additionally, John is concerned that if

2

identifying information is disclosed to the public at large, it will affect John's reputation and ability to secure employment and academic opportunities. Defendants will likely exploit this publicity and attempt to impugn John reputation in an effort to intimidate him and chill this litigation. This concern is well founded. Defendants have already engaged in a concerted course of retaliation against John for engaging in protected activity, culminating in Defendants baldly extorting John in their attempt to expel John from UMASS Dartmouth.

Accordingly, in bringing this Motion, John understands this anonymity might be temporary based on the changes and dynamics of the proceedings, and at least seeks that his name and personal identifying information be shielded from public disclosure through the initial stage of this litigation.

John filed this Motion on an *ex parte* basis because Defendant had not yet been served concurrently with filing his complaint. John has provided his true identity in the second compliant but requests it remain under seal. In this case all Defendants know the identity and contact information of John.

## STATEMENT OF FACTS

John, a Caucasian male, is a graduate of the United States Military Academy with a 3.5 GPA; upon graduation he served with distinction as a decorated veteran having served as an Airborne Ranger Infantry Officer in the U.S. Army. As the result of his physical and mental health service connected disability, Veterans Affairs offered him a full scholarship with stipend under Chapter 31, which authorized John 5 years of academic funding support to pursue a Ph.D. in Oceanography. During the events described herein, he had been a student at UMASSD School of Marine Science and Technology (SMAST), and commuted to and from his classes on the main campus of UMASSD and the two campuses for SMAST. He maintained two workstations: at the

AT&T Building SMAST campus, and at the electrical engineering lab of John Buck on main campus.

Immediately after Cynthia Cummings, Assistant Chancellor of Student Affairs, learned of John's conviction, she, with assistance of Defendant Deborah A. Majewski, attempted to criminally extort John[1] into withdrawing from school at a Conduct Conference on May 4, 2016. Specifically, John was threatened that if he refused to withdraw from school by the end of the meeting, then Majewski and Cummings's would disseminate his educational record information, accuse him of a crime and destroy his reputation with his colleagues and advisors both within UMass Dartmouth and with outside research opportunities. When they failed to compel his resignation, they conducted a sham Title IX investigation that sought to recruit unsolicited testimony in hopes of generating baseless misconduct charges that could warrant John's expulsion. Inter alia, the investigator eventually accused John of creating a hostile learning environment by telling others that he benignly missed his children, and complained about not obtaining a desk in the new graduate student area. With these and similar accusations, UMASSD travailed to expel John or compel his "voluntary" withdrawal.

For four months he was banned from campus, issued a "Do Not Contact" order denying him communication with anyone associated with UMass Dartmouth and suspended. During that time, John participated in the Special Examiner's Process under protest, because each step of the Special Examiner's Process denied John his due process rights under the XIV Amendment to the U.S. Constitution, Title IX, and repeatedly breached terms of explicit and implicit contracts.

---

[1] Cummings presently faces a magistrate's hearing to adjudicate whether probable cause exists to charge Cummings with criminal felony extortion (Mass G. L. c. 265, Section 25) for her actions on May 4, 2016. Also upon knowledge and belief, Cummings is under investigation by the Massachusetts Office of Attorney General, Criminal Division, for he actions related to John.

During those four months, UMASSD attempted to engender John's "voluntary" or forced expulsion, and destroyed his ability to pursue his educational goals with targeted defamation.

During the biased investigation, John neither had the opportunity to learn the identity of his supposed accuser, see any shred of evidence against him, confront the accuser, question the witnesses, nor present a defense at a hearing. Because there is no hearing, the accused never knows accuser's identity, what the accuser (or the accuser's witnesses) actually have said, but only knows what the Special Examiner chooses to tell him. In John's case, he was neither told orally nor in writing the factual bases for the charges against him at any time before or during the four months of the Special Examiner's investigation; instead, he had to try to piece together what in particular he was accused of doing from the questions posed to him by the Special Examiner.

UMASSD officials maliciously destroyed John's alternative education options. On May 9, 2016 John received an email from Tom Schultz, Ph.D., Director, Marine Conservation Molecular Facility, Director of Undergraduate Studies, Duke University Marine Lab. It read: *Dear John, Thank you for your application to the Duke University Marine Lab's summer program. Unfortunately we are not able to offer you a space in our program this year. We appreciate your interest in the Duke University Marine Laboratory and we wish you all the best.* John spoke to Tom Schulz telephonically on or about May 9, 2016, seeking an explanation to his rationale. Schulz referred to John's Title IX investigation at UMASSD; he stated, "I can't allow you on the island. We have to keep our people safe. You should have informed Doug you had a felony conviction." When John asked him if the UMass Dartmouth staff informed him of his criminal conviction and Title IX investigation, he stated, "What do you think?"

The week following the Conduct Conference of May 4, 2016 and in direct violation of its obligations with respect to John's privacy and confidentiality in the Title IX process, and of

FERPA Cummings and Majewski directed Steve Lorenz, Dean of SMAST to hold an all hands meeting with compulsory attendance regarding John. In direct violation of UMASSD procedures, attendees were informed that UMASSD had initiated a Title IX investigation against John, that John was enjoined from speaking to any student, faculty or staff associated with UMass Dartmouth, and John was issued a "Do Not Trespass" order, denying him access to UMass Dartmouth property. Students, faculty and/or staff were directed to report to Cummings when/if any sightings of John were made on UMASSD property and/or if any contact was made by John or by his proxy. Within a week of the Conduct Conference students, faculty, and staff at SMAST knew that John had a criminal history as the result of the all hands meeting and leaks from the Title IX investigation.

UMASSD officials concerted to file false criminal complaints against John. On May 17, 2016, A UMASSD Police detective filed a report stating that a professor alleged that "somehow" John logged into his computer a few days prior, which would have constituted a violation of John's "Do Not Trespass Notice," and other crimes. Chief of Police Fioravanti conducted an extensive and prosecutorial investigation, ordered the computer confiscated for forensic evidence and provided it to Associate Director of Enterprise Systems. No evidence of John's presence on UMASSD or SMAST property existed, including but not limited to the fact that: no student, faculty member or staff saw John enter SMAST or step upon any UMASSD property; building internal or external video surveillance failed to record his presence; John's swipe card needed for entrance to SMAST buildings failed to record his intrusion; no evidence of forceful entrance into the professor's locked office existed; John did not have the code to bypass the building's security upon entrance after hours, and no computer forensic evidence existed linking John to the alleged criminal computer trespass.

John <u>never</u> stepped foot on UMASSD property from May 4 to early September 2016 unless escorted by UMASSD Police to meet Majewski and Cummings.

Despite **no** evidence of John's guilt – other than the implausible accusation that he "somehow" logged onto a Professor's computer in a locked office - during a "No Trespass" period - Chief Fioravanti hunted any potential evidence, which could warrant John's arrest and criminal prosecution. In glaring contrast, Chief Fioravanti refused to even accept John's statement regarding criminal liability of UMASSD officials and recused his entire department in direct violation of his oath to impartially to uphold the laws of Massachusetts and the United States. Furthermore, when John filed a Freedom of Information Act request seeking the name of the professor, UMASSD denied same.

When it was obvious that UMASSD officials could neither compel John's resignation through extortion threats, nor find him responsible in a male biased witch-hunt Title IX investigation, Cummings maliciously defamed John. Consequently, his associates, advisors, and colleagues in his chosen research field would neither communicate nor collaborate with John again after UMASSD officials intentionally and maliciously spread John's confidential student records protected under FERPA and innuendo regarding his Title IX proceeding.

Not surprisingly, John was found not responsible for any allegation, a finding which by due process and fundamental fairness must end all further disciplinary action and allow a student to continue his education program unfettered. Instead and unhappy with the complete lack of evidence to support a finding of responsible for the nonexistent misconduct in John's case, Majewski and Cummings in direct violation of every policy imaginable, still sanctioned John with a warning and directed the Dean of SMAST to implement 'appropriate intervention.'

In disseminating the Title IX results of John, UMASSD officials again violated John's contracted privacy under their disciplinary process. 'Appropriate interventions' censored John from engaging other students, confined him to a workspace adjacent to the Dean's office, and kept John from his normal routine in benefitting from his educational experience. The 'appropriate intervention' proscribed by John's contract, school policy, and any sense of fair play violated John's rights under his 1st and 14th Amendment rights and Title IX. Then Defendants amended his academic program without his consent from a Master's Thesis Program/Fastrack to Ph.D. to Master's Non-Thesis, destroying his ability to pursue his research interest.

UMass Dartmouth leadership was cognizant of, acquiesced to and allowed malicious school officials to hijack the University's disciplinary processes for their own illegitimate purposes, and aided and abetted their abuse of process in acquiescing to the coercion of outside and internal pressures to prosecute male students. Defendants usurped the oversight procedures of the three person panel, which would have shed light on their malfeasance and efforts to rid John of UMass Dartmouth. John found the harassing environment on campus so hostile and toxic that he was compelled to seek a leave of absence and seek his education options, which in the end none existed. UMASSD constructively expelled John from an education program in his chosen field, and University he had previously loved, but which had betrayed his trust.

## ARGUMENT

Federal Rule of Civil Procedure 10(a) requires a plaintiff to disclose his or her name in the complaint. Fed. R. Civ. P. 10(a). Nevertheless, many circuit courts "have condoned pseudonymous litigation." Qualls, 228 F.R.D. at 10 (collecting cases); see, e.g., Doe v. Megless, 654 F.3d 404 (3d Cir. 2011);Francis, 631 F.3d at 1315-16; Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008). Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, courts allow the use of pseudonyms [w]here it

is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment…US. v. Doe, 665 F.2d 920, 922 (9th Cir. 1977) citing U.S. v. Doe, 556 F.2d 391, 393 (6th Cir. 1977)).

Courts must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." The Third Circuit set forth one such balancing test in Doev. V Megless, 654 F.3d 404 (3d Cir. 2011). Under that test, the district court's task is to "determine whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." Megless, 654 F.3d at 409. It is not enough that the plaintiff may suffer embarrassment or economic harm as a result of public identification; the plaintiff must show both a fear of severe harm and that the fear is reasonable. Id. at 408. The Third Circuit has adopted a non-exhaustive set of nine factors that should be considered:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives…[(7)] the universal level of public interest in access to the identities of litigants; [(8)]whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; an [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. Id at 409.

The Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records, insofar as the district court must proceed from the presumption of an open litigation process and may only limit such access in compelling circumstances.

John begins with the first six factors of the Megless test, which if satisfied, favor anonymity.

First, John asserts that he has avoided publicity in this matter, and that UMASSD's disciplinary process was itself confidential for the most part except in part that Majewski and Cummings directed SMAST to hold an all hands meeting informing SMAST personnel that John was directed to remain off campus during an investigation. Other than his immediate family circle and attorneys from whom he sought advice, John has informed no one other than Defendants that he intends to file suit. John has travailed to keep his identity in this process confidential and keep information regarding him confidential, and specifically asked the opposing Counsel (General Counsel of UMASS) to keep John's identity confidential.

Second, John contends that public identification will significantly harm his reputation as well as future educational opportunities and career prospects, regardless of the outcome of the case. Additionally John will be subjected to harassment if he is publicly identified. Defendants have shown that they have in the past and will likely in the future use confidential, sensitive, and potentially damaging information regarding John to maliciously harm his reputation and future career and educational prospects. Other sexual assault and sexual harassment cases have predominantly been allowed to proceed under John Doe at least in the preliminary stages, and the mere accusation that one has committed sexual assault, sexual harassment or created a hostile learning environment, even where, as here, the accused is ultimately found not culpable of sexual assault. Doe v. Colgate Univ., No. 5:15-cv-1069, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) ("[C]ases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers.").

Most troubling is that John still does not know the depth of the false accusations, which when they may arise might cause detrimental damage to his future. Such concern is only exacerbated in the Internet age, which can provide additional channels and will connect John's name to UMASS Dartmouth's findings and sanctions of John forever, whether or not he is successful in this litigation. This case if victorious is not a case, far from damaging John's reputation, the litigation will afford plaintiff an opportunity to "clear his name in the community." Megless, 654 F.3d at 410. John has a reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation.

Additionally, the females who were dragged into the sua sponte investigation want and deserve anonymity. Should John be publicly identified, Sally Smith and Jane Doe would likely be identified as well. Unlike a litigant, who in "using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials," Femedeer, 227 F.3d at 1246, Sally Smith and Jane Doe are nonparties. Furthermore, Sally Smith, and Jane Doe have graduated and received professional employment subsequent to graduation. Their names will be linked to a cheating scandal and improper accusations related to a school disciplinary process, which could harm their professional career and reputations.

The third factor concerns whether there is a public interest in maintaining the plaintiff's anonymity. In other words, "if this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" Megless, 654 F.3d at 410. In the instant case, several factors should be considered: (i) the uniqueness of a student with a criminal conviction attempting rehabilitation; (ii) a student alleging intentional torts against school officials above the typical Title IX bias case and (iii) a student

alleging abuse of power and intentional efforts to expel him improperly using Title IX and extortion to rid him from the university. Among the 400 + Title IX suits in the website database of (https://titleixforall.knack.com/databases#due-process-lawsuits3/due-process-lawsuits/), which provides all relevant Court documents on the available cases, none discuss the precedence of accusing School Officials of criminal conduct and which is being investigated by the Massachusetts Office of Attorney General Criminal Division, and for which a Magistrate's hearing has been set to determine probable cause of extortion. As a first blush, if John is denied his motion, others under similar conditions might avoid petitioning the Court. There is authority for the proposition that precluding pseudonymous litigation in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process. See Colgate Univ., 2016 WL 1448829, at *3.

    The fourth factor is whether there is an atypically weak public interest in knowing the litigant's identities given the purely legal nature of the issues presented or otherwise. Megless, 654 F.3d at 409. John concedes that only one count, Count V - Protocol 2015 and Policies that are Unconstitutionally Overbroad – is purely legal that would infer a weak public interest.

    The question for the fifth factor is whether "the litigant will sacrifice a potentially valid claim simply to preserve his anonymity." Id. at 410. John in this instant case will most unlikely pursue his claim if he must do so in his own name. John has a vast array of friends and West Point classmates in high positions in the Trump Administration, in the judicial branch and legislative branches of government, who could suffer as the result of the publicity of this trial if it struck a chord with local press and they chose to exploit the connection to those referred. Additionally John has travailed to rehabilitate his personal and professional life. Negative publicity related to this case would exacerbate the harm he attempts to remedy. The public has an interest in knowing

that injustices, such as the one the plaintiff suffered, are occurring. And the public has an interest in seeing that those perpetrating privacy invasions are held liable for the harms that result. John's identity is less important to bringing the injustice to light.

The sixth factor turns on whether the litigant is seeking to use a pseudonym for nefarious reasons. John seeks use a of pseudonym solely for the reasons offered herein without nefarious purpose.

The seventh factor amounts to an acknowledgement that there is a "universal interest in favor of open judicial proceedings," which John concedes weighs in favoring of disclosing John's identity.

The eighth factor concerns whether there is a stronger public interest in knowing the litigant's identity, in light of the subject matter of the litigation, the status of the litigant as a public figure, or any other reason. Id. at 409. None of the relevant actors in this litigation is a public figure in the traditional sense of drawing additional interest. Though the litigation concerns officials at a state university, it relates mostly to a mundane disciplinary process at a college relating to a hostile learning environment of one college student by another. In addition, the public's interest in the subject matter of, or any proceedings relating to this litigation,\ will not be impeded merely because plaintiff's identity is kept private. See Purdue Univ., 321 F.R.D. at 343 ("The actual identities of John and his accuser are of minimal value to the public."). This factor does not favor disclosure.

The ninth and final factor is whether any opposition to the use of a pseudonym is illegitimately motivated. John requested UMASS General Counsel to proceed under pseudonym on April 5, 2019, and received no response. The Defendants will not suffer prejudice since they know John's identity and contact information. Hence there is no such opposition, so this factor

favors plaintiff. Yet if UMASSD opposes this motion, John contends that such effort is for the purpose of using John's identity as leverage to chill the litigation.

The Ninth Circuit has similarly balanced public interest versus the need for privacy using Does I Thru XXIII v. Advanced Textile Corp., 214 F. 3d 1058, 1068 (9th Cir. 2000). This balancing test generally allows plaintiffs to use pseudonyms in three situations: (1) when "identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3)when the anonymous party is compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." Id. Where plaintiffs seek the use of the pseudonyms to shield them from retaliation, the following factors must be considered: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fear; (3) the anonymous party's vulnerability to the retaliation; (4) prejudice to the opposing party; and 5) whether the public's interest would be better served if the parties were identified. Id.

Similarly, in considering the balancing test used by the Ninth Circuit, John should be allowed to proceed under pseudonym in that the first two situations support his claim. Defendants have repeatedly and maliciously attempted to use the very information and privacy John seeks to secure in their attempts to expel John, and destroy his reputation at UMASS Dartmouth and at other Universities. If offered the opportunity, John believes they will seek to repeat their harm. John avers that Defendants will use sensitive information related to the suit to further emotionally and reputationally harm him and destroy any potential opportunity to pursue his academic or professional career opportunities.

The reasonableness of John's fear is based in the experience of the intentional harm already perpetrated upon John. Noteworthy was the purported false criminal accusation two weeks

after John's Conduct Conference, the intentional and malicious dissemination of personal information to SMAST in the all-hands meeting, in the letter of May 4th, and to multiple scientists with whom John corroborated. The false criminal accusation, executed to compel John's expulsion or worse criminal prosecution – without a scintilla of basis of evidence as to John's culpability – shows the extent to which Defendants will proceed to harm John if he is identified.

John is on unsupervised probation until March 2020; that fact and the fact he is attempting to rehabilitate his life and career makes him especially vulnerable whereas the public in general, when they learn a person has a conviction or mental health illness, instantly judge with extreme bias and cause him to be exiled. In this instant case there is no apparent data to show the public's interest would be better served if John, Sally Smith and Jane Doe were identified.

John's complaint contains extensive information that is highly sensitive and personal, including medical conditions and psychological symptoms that John has suffered as a result of the unlawful treatment alleged in the Complaint. For John, however, being publicly identified with these medical problems would be embarrassing to John and potentially damaging to his reputation. Additionally, John has a well-founded concern that Defendant – knowing John's concerns about protecting his reputation – will attempt to publicize chilling John's protected activity. Defendant's brazen threats of retaliation and coercion distinguish this case from the typical annoyance and criticism of ordinary litigation.

Examples of cases where courts have allowed parties to proceed under a pseudonym related to highly sensitive matters include those involving "'abortion, birth control, transsexuality, **mental illness**, welfare rights of illegitimate children, AIDS, and homosexuality.'" *Id.* (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D.Pa. 1990)). In *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 468 (E.D.Pa. 1977), the plaintiff suffered from: anxiety

disorder; dysthymic disorder; adult attention deficit disorder; personality disorder; immature, inadequate; passive aggressiveness; and occupational stress. In Provident, the plaintiff only disclosed the fact that he suffered from mental illnesses to his immediate family and medical providers.

In this instant case, John has been diagnosed with mental health disorders which accounts for much of his total and permanent disability with Veterans Affairs, and for which he received his scholarship under Chapter 31. John has been diagnosed with bipolar disorder, severe depression, adult ADHD, and PTSD. Likewise John has disclosed this fact only to his close family, medical providers, and attorneys. Even though John could have received accommodations from UMASSD for his disability, he chose to refrain from notifying the school of his diagnosed illnesses. The fact that John suffers from mental health illness will be brought out in the proceedings as they pertain to damages. John again emphasizes that the privacy concerns of his illnesses would likely preclude prosecuting his claim if his motion to proceed under pseudonym is denied.

The connection between John's true name and the intimate material that was published has already harmed John. However, the harm that exists when privacy is violated is amplified according to the number of people who are aware, or could become aware, of the private information. If John's true name is used in the lawsuit, the lawsuit itself may further connect the John's true name and identity to the intimate material online, thus increasing interest in and dissemination of the material.

Identification poses a serious risk of retaliatory physical or mental harm of John. The Complaint details at length how Defendant's retaliatory conduct to date has taken a profound psychological and physiological toll on John. John has experienced severe symptoms of emotional

distress – including extreme anxiety, PTSD flashbacks, cracked teeth, depression, and insomnia – that have necessitated treatment from numerous health care providers.

Courts have recognized that Doe status is appropriate in cases concerning alleged human rights violations. Although reported decisions have not addressed the pseudonym issue directly, it is clear that the plaintiffs in those cases were permitted to proceed using pseudonyms. See, e.g., Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) (two Jane Doe plaintiffs); Xuncax v. Gramajo, 886 F. Supp. 162, 170 D. Mass. 1995) (one Juan Doe plaintiff); Doe v. Islamic Salvation Front, 993 F. Supp. 3 (D.D.C. 1998) *(all plaintiffs proceeding as Does)*

As in those cases the Court should allow John to employ a pseudonym because he is alleging that Defendants are responsible for his current and future reputation and physical and mental well-being.

The interests of Defendant and/or the public will not be harmed at this early stage of the case if Johns name is not revealed. *Crucially, John's identity is being shielded only from the public at large, not from Defendant itself.* Defendant knows John's identity and have been informed, contemporaneously with this filing, that John has initiated this lawsuit. Accordingly, since no information is being withheld from Defendants, Defendants have ample ability to defend themselves in this litigation. At present John seeks his personally identifying information not be placed in the public record when John pleads his case and when Defendants presents their answer and defenses. Defendants cannot assert any legitimate interest in publicizing John's identity at this juncture of the litigation. John is prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

Defendant is not prejudiced by allowing John to press his claims anonymously at this juncture given limited, initial stage through which John seeks this relief. It is common for Courts

to grant leave to file a complaint anonymously while reserving the right to order disclosure of a John's identity at a later stage of litigation, *See, e.g., Doe v. City of New York*, 2016 U.S. Dist. LEXIS 16344, at *12-13 (S.D.N.Y. Feb. 4, 2016) ("Plaintiff's motion to proceed anonymously is GRANTED at this time and the Court authorizes Plaintiff to file the proposed Amended Complaint. However, Defendants may move to revisit the issue of John's anonymity before the case proceeds to trial."). If any unforeseen prejudice to Defendant arises, any such prejudice can be mitigated by ordering disclosure of John's name at that time.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court John requests that his Ex Parte Motion to Proceed Under Pseudonym and For Protective Order be granted, that (a) The parties shall use the pseudonyms "John Doe" for the plaintiff and "Jane Doe" and "Sally Smith" for the potential female complainants in the underlying disciplinary proceeding; and the parties shall redact the true names of John Doe and Sally Smith and Jane Doe from all documents in this case and refrain from revealing their true identities, and this protective order shall remain in effect until such time as a further order is issued.

Dated: April 11 , 2019

Respectfully submitted.
By: /s/ John Doe, Pro se
53 Child Street, Unit 669, Warren, RI 02885