UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HARNOIS,<br>Plaintiff<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS DARTMOUTH, PEYTON R. HELM, CYNTHIA CUMMINGS, DEBORAH MAJEWSKI, SCOTT WEBSTER, DAVID GOMES, JOHN BUCK, EMIL FIORAVANTI, and UNNAMED PROFESSOR,<br>Defendants. | ) | Case No. 1:19-cv-10705-RGS |

**MEMORANDUM IN SUPPORT OF UNIVERSITY DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

The University defendants submit this memorandum in support of their Motion to Enforce Settlement Agreement. The parties reached a final and enforceable settlement agreement on February 4, 2020, when the University defendants fully accepted the terms of a settlement offer that plaintiff, John Harnois, had made the previous day. Ex. 1. Mr. Harnois then accurately reported the case settled on February 5. See Dkt. 75. University counsel created a standard draft settlement agreement and release, but after only one round of email exchanges about Mr. Harnois's proposed changes to boilerplate terms in the draft, Mr. Harnois, citing two baseless grounds, claimed that the case had never been settled in the first place. Exs. 2-6.

## I. FACTUAL BACKGROUND.

Mr. Harnois, a former graduate student at the University of Massachusetts Dartmouth, brought numerous claims related to a student conduct investigation that the University initiated against him in the Spring 2016 semester. See Dkt. 30. The court dismissed many of the claims pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. 52) and 12(b)(6) (Dkt. 60). The University defendants answered the remaining claims on November 12, 2019 (Dkt. 65), denying any wrongdoing.

### A. The Settlement Agreement.

On February 3, 2020, Mr. Harnois made the following written settlement offer:

> To satisfy my demands, and settle the matter of John Harnois v. UMASS et al. I require **$50,000** for my damages **and** **$20,000** for the special damages of attorney fees which I spent in defending myself during UMASSD's title IX investigation, an investigation that should not have ever taken place. If this is amendable to you, I would agree to sign a joint letter to the Court dispensing of this matter. If not we can proceed to discovery.
>
> Please inform me by 6 February 2020 which will be the date I will file my motions with the Court to which you did not assent.

Ex. 1 (emphasis in original). The University defendants accepted Mr. Harnois's offer on February 4, when University counsel responded as follows:

> The University defendants accept your February 3, 2020 written offer (below) to settle the matter of John Harnois v. University of Massachusetts Dartmouth, et al. (Case No. 19-10705-RGS) for $70,000.00 (seventy thousand dollars).

> I will prepare a Settlement Agreement and Release concerning this settlement of the above-captioned case for your review.

Id.

On February 5, Mr. Harnois accurately reported the case settled to the Court in a status letter (Dkt. 75) that provided, in relevant part:

> I have tendered a settlement offer of $70,000 in compensation for dispensing all claims in this case, an offer which neither included any other demands nor offered any additional terms of settlement. For example, I did not demand reputational repair, nor did I offer nor will I agree to any non-disclosure agreements, etc… Defendants accepted the terms of my offer. Ms. Barton is preparing a Settlement Agreement and Release concerning this settlement of the above-captioned case for my review.
>
> Hence, I submit on behalf of Ms. Barton and myself, that parties anticipate filing a stipulation of dismissal with thirty (30) days, and respectfully request that discovery be stayed pending settlement, and the filing of a stipulation of dismissal.

**B. Post-Settlement.**

On February 11, University counsel emailed Mr. Harnois a proposed settlement agreement and release. Ex. 2. Mr. Harnois responded with proposed changes on February 14. Ex. 3. In an email on February 19, University counsel addressed each of Mr. Harnois's proposed changes, indicated that the University defendants had agreed to certain of the proposed changes but not others, and provided a revised draft of the settlement agreement and release consistent with the agreed-to changes. Ex. 4.

Despite the fact that the parties had engaged in only one email exchange about proposed changes to the settlement document, Mr. Harnois claimed in his next response that they had "come to an impasse on the language and terms of the settlement …." Ex. 5.  On February 21, University counsel rebutted this claim by explaining that "[t]he case was settled – as a matter of law – on February 4, when the University defendants accepted the terms of your February 3 offer."  Id.  In response, Mr. Harnois purported to "rescind" his settlement offer of February 3, claiming that that his $70,000 offer had been based on (1) his mistaken belief that he would not owe taxes on the settlement proceeds and (2) his belief that he would be permitted to serve a total of only 30 interrogatories, 30 requests for admissions, and 30 document requests and take five deposition per this Court's order of November 18, 2019 (Dkt. 68) – a belief he claimed to have formed only by accepting the University's position about the scope of the order as definitive.  Ex. 6.

## II.   THE PARTIES ENTERED INTO A FINAL SETTLEMENT AGREEMENT.

A settlement agreement is an enforceable contract.  See, e.g., Carver v. Waldman, 21 Mass. App. Ct. 958, 960 (1986).  An enforceable contract requires proof of "(1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).  Email exchanges are sufficient to form a binding settlement agreement, so long as they are clear, complete, and definite and evince the parties'

intent to be bound. See Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 211-13 (2008). In assessing parties' intent to be bound, appellate courts have "consistently emphasized the qualities of seriousness and commitment characterizing a settlement agreement reported to a trial court." Basis Technology Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 42 (2008), citing Correia v. DeSimone, 34 Mass. App. Ct. 601, 603–604 (1993) and cases cited.

In this case, Mr. Harnois and the University defendants reached a final and enforceable settlement agreement on February 4, 2020, when University counsel accepted the terms of Mr. Harnois's settlement offer of February 3. Those terms were clear, complete, and definite, and the parties intended to be bound by them. In fact, Mr. Harnois affirmed that his offer contained only one settlement demand – payment of $70,000 – when he reported the case settled. See Dkt. 75 (noting that his demand of $70,000 in exchange of dismissal and release "neither included any other demands nor offered any additional terms of settlement"). While the parties had a subsequent exchange about proposed changes to the draft settlement agreement and release, that document would only be a memorialization of the final agreement that the parties had already reached, and Mr. Harnois is not even citing the lack of a final settlement document as a basis for his claim that there was no settlement.[1] In fact, by focusing on

[1] An otherwise binding contract will not be nullified simply because the parties contemplate the memorialization of the agreement in a separate document. See Targus Group Intl., Inc., 76 Mass. App. Ct. at 429-30 ("The parties' arrangement for a later, final writing may signify not incompleteness but rather

purported grounds for "rescinding" the agreement, Mr. Harnois tacitly concedes that there was an agreement.

**III. THERE IS NO BASIS TO RESCIND THE SETTLEMENT AGREEMENT.**

Mr. Harnois's claimed grounds for rescission are baseless. Regarding taxes, even if Mr. Harnois's purported failure to understand the tax implications of settlement could conceivably be classified as a unilateral mistake (which the University defendants do not concede), it would not satisfy any of the elements required for rescission.[2] The party making such a claim must prove that he "does not bear the risk of the mistake and either (1) enforcing the agreement would be unconscionable or (2) the other party had reason to know of the mistake or his fault caused the mistake." Nissan Autos. of Marlborough, Inc. v. Glick, 62 Mass. App. Ct. 302, 307 (2004), citing Restatement (Second) of Contracts § 153.

First, Mr. Harnois did bear the risk of the mistake, because he made his settlement offer and entered into the settlement despite his admitted lack of tax

---

the subsequent memorialization of an already accomplished agreement."), citing McCarthy v. Tobin, 429 Mass. 84, 86–88 (1999); Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 141 (1987) ("If ... the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract."); Basis Technology Corp., 71 Mass. App. Ct. at 37–38 (2008) (settlement agreement enforceable even though it contemplated a later, final writing).

[2] Unilateral mistake is a disfavored defense in any event. See Greene v. Ablon, 794 F.3d 133, 147 (1st Cir. 2015), citing Eck v. Godbout, 444 Mass. 724, 731-32 (2005); Restatement (Second) of Contracts § 153 cmt. a (1981).

knowledge. "A party bears the risk of a mistake when ... he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient…." Greene v. Ablon, 794 F.3d 133, 148 (1st Cir. 2015), citing Restatement (Second) of Contracts § 154. Second, enforcement of this settlement could not be unconscionable given that the only difference between the $70,000 Mr. Harnois demanded and the amount he now deems objectionably low is a mandatory tax obligation. Finally, the University defendants had no reason to know that Mr. Harnois was unaware of the tax consequences of settlement, and they certainly did not cause Mr. Harnois's failure to understand the tax consequences.

Mr. Harnois's other claimed basis for rescission is self-refuting. Mr. Harnois accuses University counsel of somehow inappropriately convincing him, during a Rule 26(f) conference, that a prior discovery order (Dkt. 68) meant that he would only get to serve a total 30 interrogatories, 30 requests for admissions, and 30 document requests and take five depositions. Ex. 6. Yet, even in the same email, Mr. Harnois concedes that what University counsel provided was "an opinion of law." Id. In other words, the accusation is that during a conference that specifically concerned discovery, University counsel articulated the University's position as to the meaning of a discovery order. Mr. Harnois describes nothing more than ordinary advocacy, and, regardless, the

University's position was manifestly based on a fair reading of the order, even if the court ultimately interpreted the order more broadly (Dkt. 74).[3]

In any event, the fact that Mr. Harnois filed a motion seeking a broader reading of the order the next morning (Dkt. 72) strongly suggests that he was never convinced of the University's position at all.  At a minimum, Mr. Harnois had rejected the University's position by the time he started drafting that motion, and he could have withdrawn his settlement offer at any time.  Instead, he kept the offer active even after the court allowed his motion in part at 11:29 a.m. on February 4 and permitted him to serve substantial additional discovery requests (Dkt. 74).  The University accepted Mr. Harnois's settlement offer more than seven hours later, at 6:58 p.m.  Ex. 1.  Mr. Harnois did not complain about the acceptance or even reference the discovery order issue at that time but instead quickly reported the case settled the next morning (Dkt. 75).  His first reference to the discovery order issue in relation to settlement came in a February 19th email.  Ex. 5.

---

[3] The order (Dkt. 68) provided, in relevant part, as follows:

> Without leave of court, the parties are permitted to serve 30 interrogatories, 30 requests for admission and 30 document requests, to be filed within 30 days of the initial disclosures. The court expects responses to be made in thirty days, unless a request for additional time is granted.  A party may not notice more than 5 deponents without leave of court on a showing of good cause.

## IV. CONCLUSION

For all of the foregoing reasons, the parties reached a clear, complete, and definite agreement on February 4, 2020, and intended to be bound by its terms. The University defendants therefore respectfully request that this court allow their Motion and enforce the terms of settlement.

Dated: February 25, 2020

Respectfully submitted,
UNIVERSITY DEFENDANTS
By their attorneys,

*/s/ Mark A. Johnon*

Denise Barton, BBO No. 675245
Deputy General Counsel
Mark A. Johnson, BBO No. 651271
Associate Counsel
University of Massachusetts
333 South Street, 4th Floor
Shrewsbury, MA 01545
dbarton@umassp.edu
majohnson@umassp.edu

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Mark A. Johnson, counsel for the University defendants, hereby certify that I sent an email to Mr. Harnois on February 25, 2020 concerning the foregoing motion. Mr. Harnois has indicated that he does not assent to the motion.

*/s/ Mark A. Johnson*
Mark A. Johnson

**CERTIFICATE OF SERVICE**

I, Mark A. Johnson, counsel for the University defendants, hereby certify that the above document was transmitted through the CM/ECF electronic filing system of the United States District Court, to plaintiff John Harnois.

*/s/ Mark A. Johnson*
Mark A. Johnson