# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

-------------------------------------------------X
**JOHN HARNOIS,**                           )
                        **Plaintiff,**      )
                                            )       Civil Action No: 1:19-CV-10705-RGS
**v.**                                      )
                                            )
                                            )
**UMASS  at DARTMOUTH, et als,**            )
                        **Defendants.**     )
-------------------------------------------------X

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION

### TO DEFENDANTS MOTION TO ENFORCE SETTLEMENT

John Harnois,
510 Child St., APT 302B
Warren, RI 02885
(508) 333-1728

PLAINTIFF, Pro  Se

1

## FACTUAL BACKGROUND[1]

Prior to Plaintiff's email of February 4, 2020 (Dckt. 79-1, p. 1), Plaintiff had prior offered multiple settlements with demands consistent with those in other similar claims (Exs. 1-3)[2]. Within an hour of Plaintiff's email (Dckt. 79-1, p. 1), Plaintiff, Ms. Barton (herein as "Barton") and Mr. Johnson (herein as "Johnson") conducted a Rule 26(f) conference; at the conclusion of same, all discussed settlement. The term "require" in Plaintiff's offer was specifically discussed and defined 20 minutes prior to Plaintiff's drafting the email. "Require" meant "require settlement money free and clear" or receipt of funds with no known encumbrances. Barton understood Plaintiff's intent as to that term, that he could accept nothing less than $50,000 free and clear for his damages ($20,000 for special damages of attorneys' fees in representing him during investigation was always considered distinct). Also Plaintiff would require settlement from all nine named Defendants. Both agreed any settlement would be an "all or nothing aggregate settlement." The deadline to fully inform Plaintiff was 6 February 2020. Plaintiff was not fully informed of the acceptance inasmuch as the proposed Settlement Agreement and Release (herein as "SAR") was not provided Plaintiff until 11 February 2020. Plaintiff directed Barton to "expedite documents for my review" on February 5, 2020 (Dckt 79-4, p. 6), but she disregarded the deadline and Plaintiff's reminder.

## STANDARD OF REVIEW

As Judge Stearns ruled in *Enos v. Union Stone, Inc.*, 732 F.3d 45, 48-49 (1st Cir. 2013), a settlement agreement is a species of contract citing *NBA Props., Inc. v. Gold,* 895 F.2d 30, 33 (1st Cir.1990). Where, as here, the underlying action is brought pursuant to a federal statute, whether a settlement agreement is enforceable is a question of federal law. *See Quint v. A.E. Staley Mfg. Co.,*246

---

[1] Plaintiff apologizes for the numerous exhibits and the form in which there are filed, but he lacks the technical skill and software to combine emails into one pdf and exhibit.
[2] Settlement offers of: (4/1/19 - $200,000); (7/17/19 - $70,000 plus law school education at UMASSD Law); (10/5/19 - $100,000 plus interest and attorney fees for Title IX proceedings plus interest)

F.3d 11, 14 (1st Cir.2001); *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999). The relevant federal substantive law includes the common-sense canons of contract interpretation derived from state law ...." *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 712 (1st Cir. 1999). Here, that means that the party seeking to enforce an agreement bears the burden of "proving the existence of a contract." *Moore v. La-Z-Boy, Inc.,* 639 F.Supp.2d 136, 140, RGS, (D. Mass. 2009) (applying Massachusetts law); *United States ex rel. Allen v. Alere Home Monitoring, Inc.,* 355 F. Supp. 3d 18, 23-24 (D. Mass. 2019).

The load-bearing element of a contract is the mutual assent of the parties to the essential terms of the agreement, the so-called "meeting of the minds." *See ITT Corp. v. LTX Corp.,* 926 F.2d 1258, 1260 n. 1, 1265 n. 7 (1st Cir.1991). Under First Circuit law, as elsewhere, where there is no meeting of the minds between the parties because of a mistake of fact, no contract is formed, and the imperfect agreement is voidable at the election of the party adversely affected. 13 S. Williston, Contracts § 1535 (1970). Typically, matters of contract interpretation turn on the intent of the parties. See *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994). "Parties do not become contractually bound until they mutually assent to bind themselves to an agreement. Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do." Salem Laundry Co. v. New Eng. Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987) (citation omitted) (citing 1 Williston on Contracts § 18, at 32 (3d ed. 1954) ); see also Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 853 (1st Cir. 1987) (describing the "established principle that 'contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations."

Summary enforcement is inappropriate and the parties are entitled to an evidentiary hearing if material facts are in dispute concerning the very existence or terms of the agreement. *Malave v. Carney Hosp.,* 170 F.3d 217, 220 (1st Cir.1999); *In re Mal De Mer Fisheries, Inc.*, 884 F. Supp. 635,

638 (D. Mass. 1995)[3]. Likewise, summary enforcement is improper when the authority of an attorney to enter into a settlement agreement on behalf of his client is in dispute.[4] *Ibid.*

## ARGUMENT

## I.    FAILURE  TO ENTER INTO FINAL ENFORCEABLE AGREEMENT

### A.    The Supposed Agreement Between Parties Was Not Finalized

As District Judge Steven McAuliffe explained in *Clark v. Mitchell*, 937 F. Supp. 110 (D.N.H. 1996), "parties either have a complete, enforceable settlement agreement, requiring no further negotiation on any material point, or they have no settlement agreement at all." *Id.* at 114 (rejecting argument that the plaintiff "should be ordered to negotiate the remaining disputed terms in good faith" and holding that there is "no middle ground between an enforceable settlement agreement and no settlement agreement at all"); *Malek v. Verizon Communications, Inc.*, Civil Action No. 02-30164-MAP, at *5 (D. Mass. Jan. 27, 2004)

Based on the resulting discussion regarding settlement during the Rule 26(f) Conference on 2/3/2020 and Plaintiff's email of 2/3/2020 (Dckt 79 -1),  Plaintiff offered the following and nothing more: (1) Aggregate agreement to settle the case - only all unique and specific demands related to John Harnois v. UMASS et al. - against all named Defendants (given the understanding that all

---

[3] Citing *Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir. 1995). *Accord United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir. 1993) (finding trial court abused its discretion by summarily enforcing a settlement agreement where attorney representations of material facts regarding the reaching of a settlement conflicted); *Callie v. Near,* 829 F.2d 888 (9th Cir. 1987) (finding an abuse of discretion by trial court's failure to conduct an evidentiary hearing where intent of the parties and material terms of the agreement were in dispute); *Russell v. Puget Sound Tug Barge Co.,* 737 F.2d 1510, 1511 (9th Cir. 1984) ("Summary enforcement of a settlement agreement `is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactory resolve.'"); *cf. Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976).

[4] Citing *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 391 (5th Cir. 1984) (evidentiary hearing necessary to resolve conflicting affidavits as to attorney's authority to settle the dispute); *Millner v. Norfolk Western Railway Co.,* 643 F.2d 1005, 1009 (4th Cir. 1981) (evidentiary hearing required to determine whether attorney had authority to bind client to settlement agreement).

Defendants would agree to settle), (2) sign a joint letter to the Court, for which (3) he would receive $70,000 (free and clear of encumbrances)[5], and (4) he had to be (fully) informed[6] of the response by 6 February 2020.

Barton, supposedly representing <u>all</u> named Defendants (including Unnamed Professor (herein as "Un. Prof.") and Cynthia Cummings), accepted the offer.  (Dckt 79 -1, p. 1).  And if Barton had accepted the offer, stopping there per the barebones offer and per the discussion of the 2/3/2020 Rule 26(f) conference, then arguably there might have been a meeting of the minds if she in fact spoke for all Defendants. Yet, Barton prevaricated accepting on behalf of "University Defendants" (herein as "UD"), knowing either that Cummings / Un. Prof.  wouldn't settle or she hadn't discussed the settlement with them. She then added that she would prepare an SAR for Plaintiff's review[7]. When "parties contemplate the execution of a final written agreement," a strong inference is made that they "do not intend to be bound by earlier negotiations or agreements until the final terms are settled." *Mass Cash Register v. Comtrex Systems*, 901 F. Supp. 404, 415 (D. Mass. 1995) (listing cases).  In fact, Barton's SAR nullifies all prior agreements written and oral in paragraph 7:  *<u>Entire Agreement</u>. This Agreement contains and represents the entire understanding and agreement between the parties and supersedes all prior negotiations, discussions, understandings and agreements, written or oral, with*

---

[5]   The term "require" in Plaintiff's offer was intricately linked to the concept of "free and clear" as discussed at Rule 26(f) conference.

[6]   On 2/5/2020 at 6:45 am (Dckt 79-4, p. 6) Plaintiff urged Barton to expedite documents for his review to comply with deadline of 6 February 2020.

[7]   Noteworthy is the term "concerning this settlement" instead of "memorializing this settlement." The former implies further agreement required, and the latter implies simplifying the contract to agreed upon terms.  nor  complicated signed general release; (2) nor a non-disclosure statement of any kind or restriction; (3) nor any terms related to taxation including signing a W-9 (funds received were to be free and clear); (4) nor any indemnification clauses; (5) nor agreed to release Defendants such as Cummings and Unnamed Professor, who were not included in Barton's proposed Settlement Agreement, but somehow were written and included as UD in Barton's acceptance; (6) nor anything related to a "No Admission;" (7) nor waive claims against anyone else not associated with the case, i.e. potential malpractice claims against attorneys who represented Plaintiff or potential claims against others for tortious acts by persons outside named Defendants, (8) nor release of potential benefits owed, nor (9) waiver of appellate rights.  Each of these were matters of consideration, for which Plaintiff imputed value and for which he would have demanded more in settlement. Each material term were demanded in Barton's SAR, but were not part of Plaintiff's offer.

*respect to this Agreement and/or the Litigation;* which strongly self-refutes Barton's/Johnson's argument that parties finalized an agreement per Dckt. 79-1, p.1, and the SAR was a simple memorialization.

### B. <u>No Meeting Of The Minds / Disputed Material Terms</u>

In order for an enforceable contract to exist, the parties must have reached an agreement on all of the essential terms." *D'Agostino v. Fed. Ins. Co.,*969 F.Supp.2d 116, 127 (D.Mass.2013). When material facts are disputed as they relate to the validity or terms of the agreement, a settlement agreement is not enforceable. (<u>Id.</u>)  "Whether the terms of a purported contract are sufficiently definite to be enforceable is a question of law for the Court. *Armstrong v. Rohm & Haas Co*., 349 F.Supp.2d 71, 78 (D.Mass.2004)." See *Conway v. Licata*, 104 F. Supp. 3d 104, 114 (D. Mass. 2015); see *Mass Cash Register v. Comtrex Systems*, 901 F. Supp. 404, 417 (D. Mass. 1995).[8] A contract is ambiguous only where "its terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Lohnes v. Level 3 Communications, Inc.*,272 F.3d 49, 53 (1st Cir. 2001). See *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). "Where there has been no meeting of the minds sufficient to form a complete settlement agreement, . . . the case [must be] restored to the docket for trial."

In the supposed offer/acceptance (emails without consideration of SAR) the amount and/or classification of money to Plaintiff, the identification of the parties to the aggregate settlement, Plaintiff's obligations, and the time for Barton to inform Plaintiff were all material terms, all which are in dispute. Plaintiff contends his offer required funds "free and clear." Noteworthy is on February 11, 2020, in response to reading the SAR section 2a, Plaintiff drafted but never sent a counteroffer

---

[8] ('[i]t is essential to the existence of a contract that its nature and the extent of its obligations be certain.' It is not enough if parties negotiating have agreed upon certain important terms if there has been no agreement on other essential elements of the undertaking…)

(Ex. 21). [9] The drafted email, which addressed the issue of a free and clear settlement amount, indicates Plaintiff's "objective manifestation of non-consent." Plaintiff for the tax consequences Barton's drafted SAR indicated foreknowledge that Plaintiff's compensation would be taxed. Plaintiff offered an aggregate (all or nothing) settlement to all parties, expecting all parties to settle, and would not agree to partial settlement.[10]   Barton accepted for UD[11] knowing that Cummings refused to settle, and Unnamed Professor would not be included. Barton has used the ubiquitous, but consistently ambiguous term of UD throughout this litigation, which begs the question – what does UD mean and

---

[9]  Instead Plaintiff of sending the counteroffer, Plaintiff recommended editing the language in section 2a that might relieve him of the tax consequences, depending on the classification of the funds. Barton refused to accept the language. Of note the date/time stamp reads 3/4/20 at 3:25 pm, instead of 2/11/20 because each time draft email is opened, the date/time stamp is updated. Plaintiff opened the email on 3/4/20 at 3:25 and saved it as a pdf.

[10] Though Un. Prof. had not been named prior to supposed settlement, Plaintiff indicated at Rule 26(f) conference that he would only settle with **all named Defendants** (as listed in Dckt. 23).

[11] The collective term of "University Defendants", which Defendants have extensively  used  to describe a minimum of two up to  a maximum of all nine named Defendants, is an undefined and ever-changing term that lends ambiguity in the alleged acceptance as to who in fact accepted Plaintiff's offer.  Plaintiff initially filed this suit on April 12, 2019. Two days prior Barton stated that she would represent  all Defendants in this case (UMASSD and all employees (Exs. 4-7)). In continued emails, court documents and pleadings, she repeatedly represented that would represent all "University Defendants" (herein as "UD") without ever describing who is included or excluded in the term. (Exs. 8-16). On May 20, 2020 Barton filed an entry of appearance for all nine named UD (Dckt. 23) – ("*The undersigned has appeared and will represent the University of Massachusetts Dartmouth, Peyton R. Helm, Cynthia Cummings, Deborah Majewski, Scott Webster, David Gomes, John Buck, Emil Fioravanti, and Un. Prof. ("University defendants") in the above-captioned matter.*" (All Defendants were named in 2nd and 3rd Amended Complaints.).  On July 8, 2019, Barton filed Dckts 24 & 25; she failed to define UD in Dckt. 24, then excluded Un. Prof. (herein as "Un. Prof. ") from UD in Dckt. 25, n. 1. ("*The University defendants include the University of Massachusetts Dartmouth, Peyton R. Helm, Cynthia Cummings, Deborah Majewski, Scott Webster, David Gomes, John Buck, and Emil Fioravanti. As the defendant labeled University Proessor is not identified and has not been served, the undersigned, as of this filing, does not represent her or him*").   The Un. Prof.  was unidentified because Defendants concealed his identity despite Plaintiff's multiple FOIA requests. Yet given Plaintiff's emails re: Un. Prof. and the Rule 11 requirement of an attorney's investigation, Barton must have known the identity of Un. Prof.  (Exs. 17-19). On August 30, 2019 Barton filed her Motion /Memo to Dismiss per 12b1 and 12b6 (Dckts. 40/41 & 42/43 respectively) .  In Dckt. 41, n. 1  Barton excluded "Un. Prof. ," from UD but in Dckt. 43 she unexplainably included him, thereby defining "UD" again as all named UD. In Dckts. 41 and 43 Barton  used the term "UD" 23 times to describe multiple sized groups of Defendants without ever defining which Defendants she described in "UD" in relation to specific claims.  On November 12, 2019, Barton filed UD's answer (Dckt. 65), excluded Un. Prof. (Dckt 65, n.1) and used the term "UD" 826 times to describe multiple sized groups of Defendants — an ambiguous group size which ranged from one to eight. In Barton's alleged settlement acceptance for all nine named Defendants, she again used the term UD, but in her proposed settlement agreements seriatim, Barton again used the term, UD, but Barton intentionally left out Cynthia Cummings (the primary antagonist in Plaintiff's complaint) and 'Unnamed Professor." Attorney Johnson filed his Notice of Appearance on 2/2/25 (Dckt. 77) ("*The undersigned hereby gives notice that he will be appearing on behalf of the University of Massachusetts Dartmouth, Peyton R. Helm, Cynthia Cummings, Deborah Majewski, Scott Webster, David Gomes, John Buck, and Emil Fioravanti.*") then signed on behalf of UD without Un. Prof. . He then filed the Motion/Memo to Enforce Settlement (Dckts. 78/79), arguing on behalf of UD without ever listing who UD included.

to whom does Barton and Johnson refer whenever she uses the term "University Defendants?" Moreover, Plaintiff offered a barebones settlement, whereas Barton believed she could add additional material terms and consideration in the SAR. With regard to Plaintiff's good faith letter to the Court (Dckt. 75), which he filed 6 days before receiving the SAR, Plaintiff never reported that parties settled; only that a settlement was pending. Hence, based on Barton's response, Plaintiff believed that an agreement had not been finalized since Barton still had to craft an SAR with additional terms for his review and approval. Moreover, Plaintiff would not have written the Court if he had known UD did not include all Defendants and if Barton intended on adding material terms to the SAR.

### C.    Lack of Timeliness And Manner Of Barton's Response

"It is hornbook law that an offeree's power of acceptance vanishes at the time specified in the offer, and if no deadline is prescribed, at the end of a reasonable time." *Mathewson Corp. v. Allied Marine Indus., Inc.,* 827 F.2d 850, 853 (1st Cir.1987). "If the offeror sets out an exclusive method for acceptance the acceptance *must* be made in that manner." *Host v. Gray*, 2013 WL 1319609, at *3 (Mass. Land Ct. Apr. 2, 2013), *aff'd*, 85 Mass. App. Ct. 1110 (2014) (emphasis in original)." *John Hancock Life Ins. Co. v. Steven C. Leisher & Potomac Grp. W., Inc.*, CIVIL ACTION No. 15-13539-RGS, at *9-10 (D. Mass. Apr. 11, 2016). Plaintiff required Barton to inform him by 6 February 2020, which speaks for itself.  Yet, Barton waited until February 11, 2020 to provided Plaintiff the SAR; thus she failed to timely inform him (fully) of her response, and failed to comply with Plaintiff's deadline fatally preventing any agreement. Plaintiff's continued negotiations (after February 6, 2020) did not waive Defendants' failure to comply. Instead his continued attempts at settlement were made in good faith to negotiate Defendants counteroffers as detailed in editions of their drafted SARs.

**D.      Barton's SAR Constituted A Counteroffer**

A counteroffer proposing a term materially altering an original offer constitutes a rejection of the offer and cancels any agreement. Kennedy v. JP Morgan Chase Nat. Corp., 2011 WL 1576569, at *2 (D. Mass. 2011). A "material term" is any "essential and inducing feature of the contract." D'Agostino v. Fed. Ins. Co., 969 F.Supp.2d 116, 130 (D. Mass. 2013); see *Karle v. Capital One*, Civil Action No. 14-30062-MGM, at *2-3 (D. Mass. May 28, 2015). "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." Restatement (Second) of Contracts § 59 (1981). *See also McGurn v. Bell Microproducts, Inc.,*284 F.3d 86, 89 (1st Cir.2002) (plaintiff's alteration of defendant's offer letter "constituted a rejection of that offer and created a counteroffer").

The facts of this matter mirror those in *D'Agostino v. Fed. Ins. Co*., 969 F. Supp. 2d 116, 129-131 (D. Mass. 2013) where Judge Casper ruled that "that the defendant's decision to send a Release containing additional material terms rendered its response a counteroffer which could only become binding upon the plaintiff's acceptance."  Like *D'Agostino,* Defendants replied to Plaintiff by sending him a 5-page release along with an email with directions on justification for editing (Dckt 79-4, p.6).[12] Plaintiff considered the SAR a counteroffer since the SAR added material terms (n. 7 herein); it continued redefining "University Defendants," which excluded Cummings and Un. Prof.. Barton's acceptance and drafted SAR materially changed the meaning of "required" from free and clear to Plaintiff's formal acknowledgement regarding obligation of taxes, and induced a conditions precedent (signing of W-9) prior to receipt of funds. Instead of solely dispensing of the unique claims in Plaintiff's 3rd amended complaint as offered, Barton added multiple material terms, especially on the content, scope, consequences, enforcement, and/or use of the general release, which was not initially

---

[12] "Attached is the Settlement Agreement and Release for your review. If you would like me to consider any changes to the document, please indicate the change you wish to make and the reasoning for the change in a return email. And should you have any questions, please also convey those to me in a return email."

offered by Plaintiff, on which parties could not agree, and which caused Plaintiff to withdraw and reject current negotiations after three iterations of offer / counteroffer. See *White v. Fessenden School*, 358 Fed. Appx. 208, 210 (1st Cir. 2009).[13]

Although the SAR was consistent with the offer inasmuch as it provided for a $70,000 payment to Plaintiff and the relinquishment of Plaintiff's claims, it did not address the issue of funds received free and clear; it contained numerous additional terms beyond those set forth in Plaintiff's settlement offer (section 3a accurately addresses all Plaintiff offered), and those Defendants identified in the SAR as UD  - named Defendants less Cummings and Un. Prof. - were not all those to whom the offer was made.  By asking Plaintiff to sign a document that was conditional upon his assent to additional terms and or agree to only partially settle with UD, Barton rejected Plaintiff's initial offer and created a counteroffer.[14]  Similar to Federal's argument in *D'Agostino,* Johnson cites  *Goren v. Royal Investments Inc.,* 25 Mass.App.Ct. 137, 141, 516 N.E.2d 173, 176(1987), arguing that parties had reached agreement on essential terms, so the existence of unresolved subsidiary matters would not preclude enforcement of the   contract. Noteworthy is that Johnson states "terms were clear, complete, and definite, and the parties intended to be bound by them" without ever identifying such terms, and adds, "[W]hile the parties had a subsequent exchange about proposed changes to the draft settlement agreement and release, that document would only be a memorialization of the final agreement that the parties had already reached." (Dckt 79, p5).[15] Here as in *D'Agostino,* the SAR contained certain

[13]  (Court concluded that the parties never had an enforceable settlement agreement because they never agreed on the content, consequences, or use of the so-called reenrollment contract. There is no doubt that these disputes over the "reenrollment contract" were about a material term of the contract; indeed, the disagreement may have gone to the most material issues in the underlying litigation.

[14]  See *Ismert & Assocs., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 541 (1st Cir.1986) (defendant rejected plaintiff's offer and created a counteroffer by transmitting to plaintiff a release that differed from the release proposed by the plaintiff, along with a letter seeking plaintiff's signature on the substituted release).

[15]  Johnson cites cases  (Dckt 79, n. 1) that rule a memorialization of an already binding agreement, where parties have agreed on all material terms and  to execute same, serves as merely a final polished memorandum. Yet Johnson missed the point that Plaintiff never offered to execute a settlement agreement or general release, and based on the SAR sent via email to Plaintiff, the material terms had never been agreed to by the supposed final binding agreement of February 4th.

additional terms that were essential to a settlement and could not be classified as subsidiary. What is clear is that Plaintiff rejected the terms of Barton's counteroffers (Ex. 22). Hence Barton's response to Plaintiff did not create a binding agreement.[16]

Like in *D'Agostino,* the SAR was not limited to standard boilerplate provisions. It also contained provisions which had not been included in the original offer, and which sought to impose significant obligations upon the plaintiff, and alter the list of Defendants, who could accept the offer (Dckt 79-2, p. 7). Further, the SAR contained a lengthy section (3c) that imposed strict requirements on the Plaintiff, including an obligation to forfeit any other settlement or award related to the set of underlying facts to the litigation, and precluded him from being a witness to or participating in any action against any University defendant. Hence, the SAR precluded Plaintiff from litigating claims against other persons, such as his attorney who represented him in the Title IX investigation, or any other person against whom Plaintiff could or already had initiated litigation. Moreover, as set forth in the SAR, section 2a imposes tax implications that strike to the very nature of his intended offer to receive an amount free and clear, and the extensive nature of the general release (not offered by Plaintiff) demonstrates that the release and other sections were "essential and inducing features of the contract" and were therefore material to a settlement agreement. *Buchholz v. Green Bros. Co.,*272 Mass. 49, 52, 172 N.E. 101, 102 (1930)). *D'Agostino* also found that Federal's inclusion of an indemnity provision, similar to the indemnity provision in SAR section 3c, introduced a material term which rendered the Release a counteroffer. Plaintiff emphasized the barebones nature of his offer in Dckt. 75 and Ex. 20, which he knew that Barton would and did read (as confirmed in Ex 20);

---

[16]    *See Cmty. Builders, Inc. v. Indian Motorcycle Assocs., Inc.,* 44 Mass.App.Ct. 537, 556, 692 N.E.2d 964, 976–77 (1998) ("It is not enough if parties negotiating have agreed upon certain important terms if there has been no agreement on other essential elements of the undertaking" (quoting *Geo. W. Wilcox, Inc. v. Shell E. Petroleum Prod., Inc.,* 283 Mass. 383, 390, 186 N.E. 562, 565(1933))).

hence, as in *D'Agostino*, the proposed SAR varied materially from Plaintiff's original offer, thereby making it a counteroffer.

To the extent Barton and Johnson now contend that they did not consider these matters essential to a settlement with the plaintiff, their argument is insufficient to support enforcement of a settlement agreement. "It is ... a basic rule of contract law that both the offer and acceptance must be communicated if a binding agreement is to be formed." *Kennedy,* 2011 WL 1576569, at *3 n. 6. As in *D'Agostino*, if Barton believed at the time she sent the SAR that the additional terms contained therein were immaterial, she should have conveyed that information to the Plaintiff or simply accepted the offer on the terms set forth in Plaintiff's February 3, 20202 email correspondence. Instead, Barton sent the SAR to Plaintiff and directed him, "please indicate the changes you wish to make and the reasoning for the change in a return email." Such language speaks to continued negotiation, and not of a polished memorandum. Because the SAR contained material matters beyond those addressed in Plaintiff's offer, and altered the parties capable of accepting the offer, Barton effectively rejected the offer and terminated her power to accept it. Moreover, the fact Johnson filed his entry appearance for all Defendants - except Un. Prof. - and then filed Dckts 78/79, belies any of his proposed arguments for a final settlement or meeting of the minds or intent to be bound to the terms of the settlement, since it confirms his version of University Defendants was not the group to whom the offer was made.

Noteworthy is Barton's attempt (SAR sections 3b/3c) to legally protect those Defendants (Cummings and Un. Prof.), who she knew either refused to settle or were not consulted. Plaintiff fully rejected these efforts to include Cummings and Un. Prof. and others globally who were not part of the SAR (Ex. 22). After two readings of the SAR, Plaintiff realized these two Defendants had chosen not settle or had not been consulted. Given not all Defendants agreed to settle, Plaintiff considered negotiating the settlement with only UDs named in the SAR, then either proceed with claims against

Cummings and Un. Prof. at trial or seek a separate settlement with these two Defendants at a later date.  Plaintiff endeavored to ensure settlement credit extended only to those UDs named in the SAR.

### E.     Barton Lacked Authority To Settle For All Defendants

The 1st Circuit has previously held that an attorney, merely by virtue of his employment, lacks authority to compromise, *Luis C. Forteza e Hijos, Inc. v. Mills,* 534 F.2d 415, 418 (1st Cir. 1976) (citing cases); *Kinan v. Cohen,* 268 F.3d 27, 32 (1st Cir. 2001); *Michaud v. Michaud,* 932 F.2d 77, 80 (1st Cir. 1991)[17]; *McGee v. Cartoon Network,* 383 Fed. Appx. 12, 13 (1st Cir. 2010), because the decision to settle is the client's to make, not the attorney's. *United States v. Beebe,* 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901). *Abbott v. Tacconelli's Pizzeria, LLC,* Civil No. 10-1901 (JBS/AMD), at *23 (D.N.J. Jan. 30, 2013) ("Cases in which settlements have been set aside under RPC 1.8(g) involve parties who were never informed of the terms of the settlement or never assented to the settlement at all. See *Hayes v. Eagle-Picher Industries, Inc.,* 513 F.2d 892, 894 (10th Cir. 1975) (voiding a settlement when majority agreement to settlement held insufficient to bind nonconsenting parties).[18] In re Hoffman, 883 So. 2d 425, 433-34 (La. 2004) (voiding a settlement when only two of six plaintiffs signed an affidavit authorizing the attorney to negotiate and settle the case); see also Tax Authority, Inc., 898 A.2d at 519-21 (discussing Hayes and In re Hoffman).

During the Rule 26(f) conference Barton and Plaintiff made it abundantly clear and both understood that any settlement had to incorporate all Defendants. Yet, it's axiomatic that if Barton

---

[17] (While there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client, rebuttal of the presumption renders any purported settlement ineffective); "("Federal law applies to the issue of an attorney's authority to settle a civil action brought under federal law.")

[18] (" the court based its reversal on the fact that not all clients had agreed to the settlement. The court held "that the arrangement . . . allowing the majority to govern the rights of the minority is violative of the basic tenets of the attorney-client relationship in that it delegates to the attorney powers which allow him to act not only contrary to the wishes of his client, but to act in a manner disloyal to his client and to his client's interests. Because of this, it is essential that the final settlement be subject to the client's ratification particularly in a nonclass action case such as the present one." *)*

did not represent Un. Prof. then she had no authority to settle on his behalf.[19]  Cynthia Cummings, against whom the most claims survived motions to dismiss, is glaringly absent in the SAR among "University Defendants." Plaintiff offered an all or nothing settlement with all named Defendants. Since Plaintiff's offer required settlement with all nine named Defendants, and not some variation of UD, the Court should void any supposed final settlement agreement.

## II.   MISTAKE AS PART OF FORMATION OF CONTRACT

Judge Stearns ruled in *Cozza v. Network Associates, Inc.*, Civil Action No. 02-11135-RGS, at *6-7 (D. Mass. June 9, 2005), "[a] contract may be held to be nonexistent for failure of mutual assent if the parties attach conflicting and irreconcilable meanings to a material term of the contract." Where a mistake of both parties at the time of contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake. . . .*Id.,* § 152(1). *See LaFleur v. C.C. Pierce Co.,* 398 Mass. 254, 496 N.E.2d 827, 830 (1986). "A mistake is a belief that is not in accord with existing facts." Restatement (Second) of Contracts § 293 (Tent. Draft No. 10, 1975. Samuels v. Brooks, 25 Mass. App. Ct. 421, 428 (1988), citing the Restatement (Second) of Contracts, § 20 (1981). Under § 154 of the Restatement (Second) of Contracts, in the event of mutual or unilateral mistake, a party bears the burden of the risk when: (a) the risk is allocated to him by the agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as

---

[19] Arguably Un. Prof. -  who was known to Barton (see exs. 17-19), who was named in Barton's entry of appearance (Dckt. 23) and whose identity would be released on February 17, 2020 (Rule 26(a)(1) disclosures) – was not represented by Barton when she accepted Plaintiff's offer, and if he was represented by Barton, she lacked authority since she did not include him as UD in the SAR.

sufficient or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. See *O'Rourke v. Jason Inc.*, 978 F. Supp. 41, 46 (D. Mass. 1997).[20]

During the negotiation portion of the Rule 26(f) Conference Plaintiff proferrred that he could not accept anything less than $50,000 and required that amount free and clear. Barton responded that she understood Plaintiff needed at least $50,000, advised him to offer $50,000 for damages, and that she would present the offer to which her clients would likely consent. Plaintiff proffered that he was only interested in a complete settlement with all Defendants, to which Barton concurred, giving Plaintiff, based on the litigation history and her statements, a clear indication that she represented all 9 named Defendants per Dckt. 23. Hence, based on pre-negotiation advice from Barton, Plaintiff believed if he offered approximately $50,000 for damages, then he would receive that settlement free of encumbrances.   Plaintiff had not considered nor was aware of his limited knowledge of tax consequences at the time he sent his offer via email within 20 minutes of the Rule 26(f) Conference. He only considered and researched tax consequences <u>after</u> he read in surprise Barton's proposed SAR section 2a. Plaintiff holds that Barton knew of the tax consequences, but either negligently misled Plaintiff to induce him to offer a drastically reduced settlement compared to prior offers or knowingly refused to correct Plaintiff's mistake.   The tax language in the SAR, section 2a, indicates that Barton was aware of Plaintiff's mistake and acted to benefit from it. "[A] mistake by one party with knowledge thereof by the other is equivalent to a mutual mistake; a party should not be benefited by a mistake he knew the other had made." *Enos v. Union Stone, Inc.*, 732 F.3d 45 (1st Cir. 2013) citing *Hashway v. Ciba–Geigy Corp.,* <u>755 F.2d 209, 211</u> (1st Cir.1985); *see also O'Rourke v. Jason*

---

[20]   The commentators to the Restatement (Second) of Contracts recognize that the standards with respect to contractual mistakes confer "considerable discretion on the court" and "have traditionally been marked by flexibility." *Id.,* ch. 6 introductory note. "In part, this has been due," the comment continues, to the protean character of the situations involved and the circumstance that they are almost inevitably unforeseen by the parties. In part it has been due to the fact that the law of mistake was shaped largely by courts of equity which had broad discretionary powers. This characteristic of flexibility marks the rule stated in this Chapter, as is evidenced by such imprecise language as "materially" (§ 152), "unconscionable" (§ 153) and "bears the risk" (§§ 152, 153, 154).

*Inc.,* 978 F.Supp. 41, 48 (D.Mass.1997) (applying the doctrine of unilateral mistake to a settlement agreement). In the alternative, Plaintiff proffers that Barton made a mistake as to the meaning of Plaintiff's description that any settlement of approximately $50,000 had to be free and clear. See *Krantz v. University of Kansas*, 271 Kan. 234, 242 (Kan. 2001) (In rescinding a settlement where parties intended for the settlement to be nontaxable funds "as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties. *In re Estate of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979).")

During the Rule 26(f) Conference, Barton barraged Plaintiff with disparaging comments regarding his knowledge as to the law, repeatedly condescended that Plaintiff did not know the law, that he had to read the Federal Rules of Civil Procedure, that it was not her job to teach Plaintiff the law or required procedures, that she should would not teach him how to practice law. Once Plaintiff was thoroughly beaten down and told to "stop talking and let her finish," the discussion turned to discovery, when Barton authoritatively declared that that as a matter of law he would receive only one 30/30/30/5 discovery set in this case, all which indicates she intentionally manipulated Plaintiff, a legal layman, after berating him. Not only did she deceive Plaintiff on a matter of law, but she intentionally mischaracterized her knowledge of the law. Barton's legal advice changed the landscape of the case. Plaintiff immediately offered to settle for such a significantly reduced dollar value – in comparison to prior offers of approximately $200,000 – because per Barton, Plaintiff would receive only one 30/30/30/5 discovery set to obtain all the evidence necessary to prove his claims.

After sending the email offer to Barton, Plaintiff became troubled by Barton's representations. In response he spent the night researching Barton's authoritative opinion and statement of the law in general and related to the case. The next morning,  he filed Dckts 72/73 (2/4/20 at 9:37 am) seeking clarification from the Court. The Court filed its ruling (Dckt. 74) at 11:29 am, vastly expanding

Plaintiff's discovery capability. In direct response, UD soon thereafter accepted Plaintiff's offer that afternoon before he could retract it.

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake. *O'Rourke v. Jason Inc.*, 978 F. Supp. 41, 48 (D. Mass. 1997). Under the circumstances, Plaintiff should not bear the risk of the mistake.  Plaintiff holds that Barton induced Plaintiff to initiate agreement and/or knew of Plaintiff's mistake in an effort to benefit from a significantly reduced offer.  But for Plaintiff's induced mistaken belief that he had but one set of discovery and that the settlement would be free and clear, Plaintiff would not have offered the fire sale offer amount of $70,000 to settle this suit.  Here, since Barton, in the person of Defendants' counsel, "had reason to know of the mistake," Plaintiff is entitled to void the agreement. *See Torrao v. Cox,* 26 Mass. App. Ct. 247, 525 N.E.2d 1349, 1352 (1988), so the Court, in its equitable discretion, should void any supposed settlement.

### III.  CONSIDERATION FOR THE COURT'S DISCRETION

Plaintiff raises potential questionable behavior on the part of Barton and/or Johnson. Plaintiff does not cite Barton's and/or Johnson's potential violation of Mass. ABA Disciplinary Rule 5-106 [21] as justification not to enforce the supposed settlement, nor the potential violation of Rule 4.3 to unnecessarily buttress his argument regarding mistake,  but he brings it to the Court's attention as to

---

[21] Disciplinary Rule 5-106 states: "(A) A Lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement."

either the continuous intentional or negligent obfuscation or prevarication of the law and/or facts of this case in dealing with Plaintiff as an unrepresented litigant. What seems clear is Barton and/or Johnson knew Plaintiff would only settle with all Defendants, but accepted Plaintiff's offer knowing either/both Cynthia Cummings and Un. Prof. would neither be included in nor had consented to the settlement. What is clear is that Barton and Johnson never clarified their disinterest, nor advised Plaintiff to seek Counsel during and after the Rule 26(f) conference of 2/3/20 or in negotiation proceedings. Moreover, Barton's declaration of authoritative law in this case that Plaintiff had only 30/30/30/5 to obtain discovery combined with the legal advice of generally "you should choose wisely who you depose since whoever you choose will be one of the five deponents", smacks of legal intimidation of a layman. Also if Barton and/or Johnson knew of potential tax consequences when Plaintiff addressed the nature of free and clear payment, especially in the course of a settlement, then each had a responsibility to speak frankly. Finally, when Barton demanded subsequent enforcement authority with a Massachusetts Superior Court (Dckt 79 - 5, p. 4, Sect G(1)), Barton knowingly misled Plaintiff with legal advice and mischaracterization of the law when Plaintiff wanted the District Court to retain ancillary jurisdiction for enforcement purposes.[22]

---

[22] As distinguished from enforcing the settlement agreement, the court clearly has ancillary jurisdiction to enforce its own orders and decrees. Therefore, to the extent the settlement is embodied in the judgment, the court can enforce it by execution and by contempt proceedings in appropriate cases. *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986). Parties who wish to retain the court's jurisdiction to enforce their settlement agreement may do so by having the court expressly retain jurisdiction in the order of dismissal. Although this is the better, more straightforward course, incorporating the terms of the settlement agreement in the order of dismissal also creates jurisdiction. *K.C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014); See *Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576–577 (7th Cir. 2005).

## **REQUEST FOR ORAL ARGUMENT**

Plaintiff requests oral argument to present additional emphasis on certain arguments and be available to answer questions of the Court as to formation, validity, and enforceability of the supposed final settlement agreement argued in Dckt. 79 and opposed herewith.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests: (1) the Court deny "University Defendants" Motion to Enforce Settlement, and rule the case proceed to discovery with an amended pre-trial order, or (2) rule that Plaintiff is entitled to $70,000 free and clear of encumbrances, requiring Defendants to fully compensate Plaintiff for any tax or other consequences resulting from the settlement, and reduce the SAR to simple terms that memorialize the essence of Plaintiff's barebones offer, or (3) so the Court can make a more informed decision on Defendants' motion, schedule an evidentiary hearing to resolve the material disputed terms.

Respectfully Submitted:

Date: March 20, 2020

By: John Harnois, Pro Se

/s/ *John Harnois*
510 Child Street, APT 302B, Warren, RI 02885
Doe.John.123199@gmail.com; (508) 333-1728

## **CERTIFICATE OF SERVICE**

I, John Harnois, Pro Se, hereby certify that the above document was transmitted through the CM/ECF electronic filing system of the United States District Court, to Ms. Barton, counsel for Defendants.

Date: March 20, 2020

By: /s/ *John Harnois*
John Harnois